UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Carter | Civil Action No. 16-01496 |
| versus | Magistrate Judge Carol B. Whitehurst |
| Youngsville II Housing LLLP et al | By Consent of the Parties |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by Youngsville II Housing LLLP ("Youngsville") and Morrow Realty Company ("Morrow Realty") (collectively "Defendants") [Rec. Doc. 65], an Opposition Memorandum filed by Page Properties & Construction LLC ("Page") [Rec. Doc. 99], an Opposition Memorandum filed by United Fire and Casualty Company ("United Fire") [Rec. Doc. 106], and Defendants' Reply thereto [Rec. Docs. 109 and 110]; as well as a Cross Motion for Summary Judgment filed by Page [Rec. Doc. 86], Defendants' Response in Opposition to the Cross Motion [Rec. Doc. 96], Page's Reply thereto [Rec. 103], an Opposition Memorandum filed by Bob Morrow Construction Company ("BMCC") [Rec. Doc. 108][1], and Page's Reply to BMCC's Opposition [Rec. Doc. 120]. For the following reasons, Defendants' motion will be granted in part and denied in part and Page's Cross Motion will be denied.

### I. Background

This action involves a personal injury claim by Plaintiff, Beverly J. Carter ("Carter"), that was initiated in the Fifteenth Judicial District Court, Parish of

---

[1] BMCC argues in its Opposition to Page's cross motion that it is entitled to defense and indemnity from Page. This issue was properly raised and thoroughly briefed in BMCC's Motion For Summary Judgment, *R.* 79, which the Court has addressed in a separate ruling. The Court will not address BMCC's motion in Page's cross motion against Youngsville and Morrow Realty.

Lafayette, Louisiana. The case was removed to this Court on October 26, 2016. *R. 1*. Carter alleges she sustained physical injuries as a result of stepping on a nail in a flower bed on the premises of her apartment building, the Somerset Apartments in Youngsville, Louisiana. Plaintiff alleges that her injury occurred on July 15, 2015. *R. 1-2*.

The Somerset Apartments in Youngsville, Louisiana, are owned by Youngsville, an Alabama limited liability limited partnership, and managed on behalf of Youngsville by Morrow Realty, an Alabama corporation. Plaintiff alleges that she sustained injuries on July 15, 2013, when she stepped on a rusty nail negligently left on the premises of the Somerset Apartments by Page, an Alabama limited liability company.[2] *R. 1-2; R. 11 at ¶ 6*. Page was the subcontractor of BMCC. *R. 65-4, Exh B*. BMCC was the general contractor that contracted with Youngsville for construction, roofing and renovation work at the Somerset Apartments. *Id, Exh. A*. Page was the subcontractor that performed the work at the Somerset Apartment contracted by BMCC. *Id, Exh B; Exh C, R. 65-5, Admission Nos. 3, 4*. Certificates of Substantial Completion for the work at issue are dated December 22, 2013; January 10, 2014; April 18, 2014; July 22, 2014. *R. 65-4, Exh. D*.

The Subcontracts between Page and BMCC identifies BMCC as "Contractor," Page as "Subcontractor," and Youngsville as "Owner" (the "Subcontracts").[3] *R. 65-4, Exh B, p. 1*. The Subcontracts refer to the "Prime Contract" between Youngsville and

---

[2] On December 7, 2016, Plaintiff filed an Amended Complaint against Page and Page's insurer, United Fire & Casualty Company ("United Fire").

[3] The record indicates there are four identical Subcontracts pertaining to the various renovations Page contracted to perform at Somerset Apartments. *R. 65-4*.

BMCC dated August 28, 2013, and identify the "Project" as "the Renovations to Somerset Apartments." *Id.* United Fire was the general liability insurer of Page. Pursuant to the Subcontracts, Page was required to carry Completed Operations insurance coverage in the amount of $1 Million per occurrence, and to maintain said coverage for three (3) years after completion of the work. *Id. § 9.1 at p. 9*. Page was also required to name Youngsville as an Additional Insured, and to maintain Completed Operations coverage for Youngsville for that duration. *Id.* Page's insurance coverage was to apply as primary and non-contributory before any other coverage provided to the Additional Insureds. *Id.* Further, pursuant to the Subcontracts, Page's insurer, United Fire , was obligated to waive subrogation against Youngsville. *Id. § 9.6 at p. 10*. In addition, the Subcontracts also provided in pertinent part, "Subcontractor [Page] shall defend, indemnify and hold harmless the Owner [Youngsville], Contractor [BMCC], . . . and agents and employees of any of them [Morrow Realty] from and against claims . . . arising out of or resulting from performance of [Page's] work under this Subcontract. . . attributable to bodily injury . . . caused in whole or in part by the negligent acts or omissions of [Page] . . . regardless of whether or not such claim . . . is caused in part by a party indemnified." *Id, § 11.1 at p. 11*. Finally, the Subcontracts provided that they are governed by the laws of the state of Alabama. *Id, § 5.2 at p. 4.*

Prior to the removal of this litigation, Defendants filed a Third Party Demand against Page in the Fifteenth Judicial District Court proceeding. The Third Party Demand makes claims of additional insured status under a general liability policy, and contractual indemnity pursuant to the Subcontract agreements between Page and BMCC. *R. 65-4.*

3

Subsequent to the removal of this litigation, Youngsville, Morrow Realty and Ironside filed a Cross-Claim against United Fire. The Cross-Claim also made demands for additional insured status and indemnity demands. BMCC filed a Cross-Claim naming Page and United Fire, making similar demands for additional insured status and indemnity demands.

## II. Contentions of the Parties

Defendants contend that Youngsville, as Owner of the Somerset Apartments, and Morrow Realty, as the agent of the Owner managing the Somerset Apartments, are entitled to defense, indemnification and insurance coverage pursuant to the terms of the Subcontracts between BMCC, as General Contractor for Youngsville, and Page, for work performed on the premises which is alleged to be the source of the rusty nail that caused Plaintiff's injury. Defendants contend that they are intended third-party beneficiaries to the Subcontracts; that the Subcontracts provide primary and noncontributory insurance coverage to Youngsville, without subrogation; that Page agreed to defend and indemnify Youngsville and Morrow Realty from claims such as those asserted by Plaintiff in the instant case; and, that the Subcontracts are governed by Alabama law which does not prohibit the provisions for defense, indemnity and insurance coverage contained therein. Defendants submit that based on the foregoing, they are entitled to summary judgment as a matter of law.

Page argues that Louisiana law applies to the Subcontracts. Specifically, Page contends that Louisiana's anti-indemnity statute, La. R.S. 9:2780.1, applies and voids, as against public policy, the insurance and indemnity requirements contained in the construction Subcontracts. Page contends that, while Paragraph 11.1 of the Subcontracts

provides indemnity to the "owner" of the property, the owner is not adequately identified in the Subcontracts. *R. 86-2, p. 6.*

As to Defendants' contentions that United Fire owes them a defense under the Policy, United Fire also argues that Louisiana law applies to the Subcontracts, and therefore, La. R.S. 9:2780.1 voids the additional insured provision of the Policy. Alternatively, United Fire contends that the allegations against Youngsville in Plaintiff's petition fail to "impute Page's fault to Youngsville" as required under the additional insured provision of the Policy. As to Defendants' contractual indemnity contentions, United Fire states that genuine issues of fact exist as to whether or not Plaintiff's claim arises out of Page's work.

*III. Summary Judgment Standard*

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c). A genuine issue of fact exists only "[i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248(1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the nonmovant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir.1997). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."

*Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995). Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir. 1992). "We do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir.2000).

*IV. Analysis*

The Subcontracts at issue in this matter contain an express choice-of-law provision which states, "This Subcontract shall be governed by the laws of the State of Alabama." *R. 65-4, § 5.2, p. 4.* Defendants filed this motion moving the Court to find that Alabama law should govern the Subcontracts.[4] Page and United Fire argue that Louisiana law applies to the Subcontracts. *R. 99.* A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014). Therefore, Louisiana choice-of-law rules apply in this case.

*A. Louisiana Choice of Law*

In Louisiana a choice-of-law provision is presumed valid. *Barnett v. Am. Const. Hoist, Inc.*, 91 So. 3d 345, 349 (La. App. 1 Cir. 2012). The party challenging a choice-of-law provision bears the burden of proving that the law chosen by the parties is invalid. *Id.* A choice-of-law provision is invalid if it violates the public policy of the

---

[4] In his Opposition to Page's cross motion, BMCC joins Defendants in arguing that Alabama law applies to the Subcontracts in this case.

state whose law would otherwise apply. La. Civ. Code Art. 3540; *Sentilles v. Kwik-Kopy Corp.*, 652 So. 2d 79, 81 (La. Ct. App. 1995). Furthermore, it is well established that where the parties stipulate the state law governing the contract, Louisiana conflict of laws principles require that the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary or strong public policy considerations justifying the refusal to honor the contract as written. *O'Bannon v. Moriah Technologies, Inc.*, 2018 WL 1561333, at *8 (La.App. 1 Cir., 2018).

Page and United Fire argue that the choice-of-law provision in the Subcontracts violates Louisiana's public policy against a construction contract which protects the indemnitor/contractor that becomes obligated to pay for another's own fault-based liability, because Alabama does not have such an anti-indemnity law. *R. 99*. A state law does not violate another state's public policy merely because the two states have different laws. *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 252 (5th Cir. 1994).

The rule governing Louisiana's conflict of law analysis regarding an insurance policy is codified in Louisiana Civil Code articles 3515 and 3537. Article 3515 provides, in pertinent part, that "an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code art. 3515. The article further provides two factors which the court must consider:

> (1) the relationship of each state to the parties and the dispute; and
>
> (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

*Id*. Similarly, Article 3537 specifically concerns contracts or conventional obligations

7

and provides that in determining which state law applies, the Court must also consider, in addition to the factors articulated in Article 3515, the following:

>   (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties;
>
>   (2) the nature, type, and purpose of the contract; and
>
>   (3) the policies referenced in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

La. Civ. Code art. 3537. "The objective of those provisions is to identify the state whose policies would be most seriously impaired if its laws were not applied to the issue at hand." *Champagne v. Ward*, 893 So. 2d 773, 786 (La. 2005) (citing to La. Civ. Code arts. 3515 and 3537). "[T]he law of the state applicable to the insurance contract is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of the factors set forth in those Civil Code articles." *Id*.

United Fire contends that because the contract was performed in Louisiana and the plaintiff is located in Louisiana, it is the state whose law would otherwise apply. In this case, however, Louisiana's *only* contact is the contract performance and the plaintiff's residence. Alabama has the most pertinent contacts. All defendants are Alabama companies—formed under the laws of and domiciled in Alabama, and all of the contracts were negotiated in Alabama, by and between citizens of the State of Alabama. Where the dispute to be decided at summary judgment pertains to the rights and obligations of Alabama citizens pursuant to Alabama contracts which contain Alabama choice-of-law provisions, the parties to the contract are justified in expecting

8

that Alabama law will apply to the contracts, and Louisiana has no interest in the application of its laws to this contractual dispute; as such, Louisiana is not "the state whose law would otherwise be applicable." *See Oglesby v. Neill Corporation*, 2017 WL 1633039, at *3 (E.D.La., 2017).

As the agreements at the heart of Plaintiff's claims were negotiated and formed in Alabama, the strength and pertinence of Alabama's contacts outweigh that of Louisiana and its substantive law will be applied. *See Fietz v. Southland Nat. Ins. Co.*, 484 F.Supp.2d 535, 544 (W.D. La. 2007), reconsidered in part, 2007 WL 1610772 (W.D. La. 2007) (contract dispute would be decided under Alabama law where negotiations surrounding the contract at issue occurred in Alabama; the Defendant's place of business was located in Alabama; the parties did business in multiple states, including Louisiana and Alabama.). As a result, Louisiana's Anti-Indemnity Statute, La. R.S. 9:2780.1, is not applicable.

B. *Additional Insurance Coverage*

Pursuant to the Subcontracts, Page's obligation with regard to procuring insurance coverage, in pertinent part, was as follows:

9. INSURANCE

9.1 Commercial General Liability (CGL). Subcontractor shall carry CGL with limits of insurance of not less than $1,000,000 Each Occurrence, $2,000,000 Products/Completed Operations Aggregate [ . . . ] and $2,000,000 General Annual Aggregate [ ... ].

CGL coverage shall be written on ISO Occurrence for CG 00 01 1093 or a substitute for providing equivalent coverage and shall cover liability arising from premises, operations, independent contractors, products-completed operations, and personal and advertising injury.

*General Contractor [BMCC], Owner [Youngsville]* and all other parties required of General Contractor, *shall be included as insured on*

> *the CGL*, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 33 10 01 AND CG 20 37 10 01 or an endorsement providing equivalent coverage to the additional insureds. This insurance for the additional insureds shall be as broad as the coverage provided for the named insured Subcontractor. It shall apply as primary and non-contributory insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured.
> Subcontractor shall maintain CGL coverage for itself and all additional insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least three (3) years after completion of the Work.
>
> . . .
>
> 9.6  WAIVER OF SUBROGATION. Subcontractor waives all rights against Contractor, Owner, Architect, and their agents, officers, directors and employees for recovery of damages to the extent these damages are covered by commercial general liability [ . . . ] insurance maintained per requirements stated above.

*R. 65-4, § 9, pp. 9-10*.

Agreements to procure insurance are generally enforceable under Alabama law, and a party who breaches such an agreement is liable for damages resulting from the failure to obtain the promised insurance. *Goodyear Tire and Rubber Co. v. J.M. Tull Metals Co.*, 629 So. 2d 633, 639 (Ala. 1993) (citing *Turner v. Deutz–Allis Credit Corp.*, 544 So.2d 840, 844 (Ala.1988); *James E. Watts & Sons Contractors, Inc. v. Nabors*, 484 So.2d 373, 375 (Ala.1985)).

The record indicates that Page secured the required coverage and United Fire issued a commercial general liability policy ("the Policy") to Page effective between February 19, 2015, and February 19, 2016. *R. 65-4, Exh E, p. 3*. The Policy provides coverage for damages assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" occurs subsequent to the execution of the contract or agreement." *Id, at p. 13*. The Policy defines "insured contract" as "[t]hat part of any

10

other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization." *Id at p. 24*.

Further, the Policy contains a "Contractors Blanket Additional Insured–Limited Products-Completed Operations Coverage" endorsement ("Endorsement"). *Id, at p. 55*. The Endorsement supersedes any inconsistent policy language, and renders "any person or organization whom you are required to add as an additional insured on this policy under a written contract or agreement" an Additional Insured if the agreement is currently in effect or becomes effective during the term of the Policy and was executed prior to the "bodily injury" or "property damage." *Id*. Thus, coverage under the Endorsement does not apply to liability arising out of the "products completed operations hazard" subsequent to the expiration of the period of time specified by the Subcontracts. *Id*. The Policy defines "products completed operations hazard" as including "all 'bodily injury' or 'property damage' occurring away from the premises you own or rent and arising out of 'your product' or 'your work' except where the work has not been completed as further defined by the Policy. *Id, at p. 26*.

The Subcontracts were executed on September 6, 2013. *R. 65-4, p. 1*. Certificates of Substantial Completion for the work at issue are dated December 22, 2013; January 10, 2014; April 18, 2014; July 22, 2014. *R. 65-4, Exh D in globo*. Plaintiff alleges that her injury occurred on July 15, 2015. *R. 1-2*. United Fire's policy was effective between February 19, 2015, and February 19, 2016. *R. 65-4, Exh E, p. 3*.

Page concedes that the Subcontracts provide insurance coverage for the "owner", *R. 99, p. 14,* it contends, however, that the record fails to prove "who actually owns the

11

Somerset Apartments" because the Subcontracts identify "Hawkeye, Inc." as a general partner and the "Owner" for purposes of the Subcontracts. *R. 86-2, pp. 6, 11*. The Subcontracts state that the "Owner" is "David Morrow of Youngsville II Housing, LLLP, Hawkeye, Inc., its General Partner." Pursuant to the Louisiana Secretary of State's website, "Youngsville II Housing, LLLP's" General Partner is "Hawkeye, Inc," located in Alabama. *R. 86-4*. The General Partner of a Limited Partnership acts for and binds the Limited Partnership. Ala.Code 1975 § 10A-9A-4.02(a). Therefore the "Owner" is Youngsville II Housing, a limited liability limited partnership ("LLLP") and David Morrow executed the document as President of Hawkeye, Inc., the General Partner of Youngsville II Housing, LLLP. *R. 65-3; R. 96.*

In its Opposition Memorandum, United Fire argues that the allegations against Youngsville in Plaintiff's petition fail to "impute Page's fault to Youngsville" as required under the additional insured provision of the Policy. The additional insured endorsement provides in relevant part:

> 1. B. The additional insured status will apply only with respect to your liability for "bodily injury" or "property damage" : which may be imputed to that person(s) or organization(s) directly arising out of "your work" at the location designated and described in the written contract or written agreement performed for that additional insured and only for that liability included in the "products-completed operations hazard".

*R. 106-1*. United Fire contends that the foregoing language requires that United Fire insure Youngsville only for damages "imputed" to Youngsville "directly arising out of" the work of Page. *R. 106, p. 5*. It further contends that Plaintiff's original and amended petitions against Youngsville do not allege any facts which would impute any liability of Page to Youngsville. Rather, United Fire argues, Plaintiff's allegations

12

assert that Youngsville is liable only for its own independent acts of negligence.

Plaintiff alleges that Page performed construction and roofing work and negligently left behind roofing nails, one of which caused Plaintiff's injury. *R. 11, ¶¶ 6, 7.* Plaintiff expressly alleges that her injury arises out of and results from Page's work under the Subcontract. *Id, ¶¶ 3-6.* This allegation that Page negligently left the nail at issue on the premises while performing roofing work is sufficient to satisfy the additional insured endorsement under the Subcontract. *See Walter L. Couse & Co. v. Hardy Corp.*, 274 So. 2d 322 (Ala. 1973); *Black Diamond Coal Min. Co. v. USX Corp.*, 581 So. 2d 839 (Ala. 1991); *Doster Const. Co., Inc. v. Marathon Elec. Contractors, Inc.*, 32 So.3d 1277, 1284-85 (Ala. 2009).

In support of its position, United Fire cites *Colony National Ins. Co. v. United Fire & Casualty Co.*, 677 Fed. Appx. 941 (5th Cir. 2017). In *Colony*, the court found there to be sufficient liability imputed to the general contractor who had authority over the jobsite and authority to enforce requirements of the subcontract. *Id* at 945-46. United Fire contends there is no correlative law in Louisiana which would render Youngsville responsible to Plaintiff for failing to supervise Page. The Court disagrees. Youngsville, as owner of the premises, party to the general contract and third-party beneficiary to the Subcontract, had similar authority.

Plaintiff contends that Page was contractually obligated to keep the premises and surrounding areas free from the accumulation of waste materials or rubbish caused by operations performed under the Subcontract. It is the breach of this duty

that is now being imputed to Youngsville—had Page successfully performed this obligation, Plaintiff would not have been injured. Moreover, under La. C.C. 2317.1, Youngsville's status as landowner gives rise to the potential for "imputed" negligence due to any condition on the premises, even where it was the negligent act of another which caused the condition. Page, came onto the Somerset premises in the service of Youngville, and allegedly created a condition that caused Plaintiff's injury. Youngsville's alleged constructive knowledge imputes the negligence of Page to Youngsville.

*C. Duty to Defend*

Under Alabama law, an insurer's duty to defend is broader than the duty to indemnify. *Mid-Continent Cas. Co. v. Advantage Med. Elec.*, LLC, 196 So. 3d 238, 243 (Ala. 2015). The question of whether an insurer owes a duty to defend is governed primarily by the allegations contained in the complaint filed against the insured. *Id*. "If the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Id*. "Where facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1012 (Ala. 2005). While deciding whether an insurer has a duty to defend its insured, the court must construe the policy "liberally in favor of the insured and strictly against the insurer." *Am. States Ins. Co. v. Martin*, 662 So. 2d 245, 247 (Ala. 1995).

Plaintiff alleged in her Amended Complaint that Page's Subcontracts with Somerset Apartments included "demolition, carpentry, roofing and siding installation" and that Page was "contractually obligated and/or had a duty to keep the premises... clean and free of accumulation of waste materials ... from the construction and/or roofing work." *R. 11, ¶¶ 4, 5*. She further alleged that Defendants' negligence in the performance of the work by Page lead to the injury Plaintiff sustained when she stepped on a rusty roofing nail.

Under Alabama law, the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured. *Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So.2d 100, 102-103 (Ala.1977). "Where facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1012 (Ala. 2005). Moreover, under Alabama law, the broad duty on the part of an insurer to defend an insured arises out of the principle that an ambiguous insurance policy is to "be construed liberally in favor of the insured and strictly against the insurer." *American States Ins. Co. v. Martin*, 662 So.2d 245, 247 (Ala.1995); *Tyler v. Insurance Co. of North America*, 331 So.2d 641, 644 (Ala.1976).[5]

As the Court finds that Youngsville is an additional insured under the United

---

[5] The Court notes the significance of this law because the *Colony* court recognized that the parties disagreed as to the meaning of "imputed" as used in the United Fire policy. *See Colony National*, 677 Fed.Appx. at 945-46, n. 13. The *Colony* court found that the duty to defend existed. *Id.*

Fire Policy, United Fire owes a defense to Youngsville on that basis. As Morrow Realty is not listed as an additional insured under the Policy, any defense owed to Morrow Realty must be determined to be under the Subcontracts' Indemnification provision.

*D. Indemnification*

Under long-standing Alabama law, contracts "should be construed as written," and that policy generally applies to indemnity contracts. *Holcim (US), Inc. v. Ohio Cas. Ins. Co.,* 38 So.3d 722, 727 (Ala. 2009) (quoting *Shoney's LLC v. MAC East, LLC,* 27 So.3d 1216, 1223 (Ala.2009)). The Supreme Court of Alabama has also recognized that:

> The Court has, for many years, held that as between private parties, indemnity contracts are enforceable if the contract clearly indicates an intention to indemnify against the consequences of the indemnitee's negligence, and such provision was clearly understood by the indemnitor, and there is not shown to be evidence of a disproportionate bargaining position in favor of the indemnitee.

*Holcim (US), Inc.* (quoting *Industrial Tile, Inc. v. Stewart*, 388 So.2d 171, 175 (Ala.1980)). "This rule includes the enforcement of a valid indemnity agreement that requires an indemnitor to indemnify an indemnitee for the indemnitee's own wrongdoing: '[I]f the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, then such agreements will be upheld.'" *Id.* (quoting *Industrial Tile*, 388 So.2d at 176).

Thus, with regard to indemnification for the indemnitees' own negligence, the only condition is that "the intention to indemnify the negligence of the indemnitee must clearly appear from the wording of the instrument, but when that intention is clear, the indemnity provisions will be read and construed so as to give them the meaning the parties have expressed." *Holcim (US), Inc.* at 728 (quoting *Eley v.Brunner–Lay Southern Corp.*, 289 Ala. 120, 124, 266 So.2d 276, 280 (1972) (overruled on other grounds)).

In the Subcontracts, Page expressly agreed as follows:

11. INDEMNIFICATION

11.1 To the fullest extent permitted by law, *the Subcontractor shall defend, indemnify and hold harmless the Owner*, [ . . . ] *and agents and employees of any of them* from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees, *arising out of or resulting from performance of the Subcontractor's Work under this Subcontract*, provided that any such claim is attributable to bodily injury [ . . . ] *caused in whole or in part by the negligent acts or omissions of Subcontractor* [ . . . ] *regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder* [ . . . ].

*R. 65-4, § 11.1, p. 11* (emphasis supplied). The Court finds that the language in the foregoing provision expresses "in clear and unequivocal language" that Page agreed to defend and indemnity Youngsville, and its agent, Morrow Realty, from any claim <u>arising out of or resulting from Page's performance of the subcontracted work,</u> regardless of whether such claim was caused in part by Youngsville or Morrow Realty.

Defendants move the Court to find that Plaintiff's claims arise out of or result from Page's work under the Subcontracts such that Page also owes indemnification

17

to Youngsville and Morrow Realty. Page and United Fire oppose such a result. The central issue in this case is whether any of the defendants were wholly or concurrently at fault. Based on the language in the indemnification provision, Page owes a defense to Morrow Realty and indemnification to both Youngville and Morrow Realty **if** Plaintiff's claim arises out of or results from Page's performance of the work under the Subcontracts and her injury was caused in whole or in part by Page's negligence.[6] Whether or not the nail which resulted in Plaintiff's claim was one which came from Page's work can only be determined after a trial on the merits. *See Am. Home Assurance Co. v. Chevron USA, Inc.*, 400 F.3d 265, 268-70 (5th Cir.2005) (holding that district court prematurely granted summary judgment on indemnity claim without providing opposing party opportunity to establish indemnitee's fault).

Morrow Realty seeks defense costs, and both Youngsville and Morrow Realty seek indemnification from Page under the Subcontracts. To date, however, there has been no judicial determination of whether Plaintiff's injury was caused by Page's work and was caused in whole or in part by Page's negligence. Thus, there are genuine issues of material fact that remain as to whether or not indemnification is owed. The Court therefore concludes that summary judgment on the enforceability of the Subcontracts' indemnity provision is premature.

*IV. Conclusion*

Based on the foregoing, the Court finds that Youngsville is a additional insured

---

[6] The majority of Page's Opposition addresses the existence of genuine issues of disputed material fact related to the roofing nail. *R.99.* As provided herein, the Court agrees that such disputed issues exist and must be determined by the trier of fact.

**18**

under Page's insurance policy with United Fire and Youngsville is owed a defense in this lawsuit. The Court further finds that Page owes both Youngsville and Morrow Realty defense and indemnity, but only in the event the trier of fact determines that Plaintiff's injury arises from or is a result of Page's work at the Somerset Apartments and was caused in whole or in part by Page's negligence.

THUS DONE AND SIGNED this 25th day of May, 2018, at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE