UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Carter | Civil Action No. 16-01496 |
| versus | Magistrate Judge Carol B. Whitehurst |
| Youngsville II Housing LLLP et al | By Consent of the Parties |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by Bob Morrow Construction Company ("BMCC") [Rec. Doc. 79], an Opposition Memorandum filed by Page Properties & Construction LLC ("Page") [Rec. Doc. 100], an Opposition Memorandum filed by United Fire and Casualty Company ("United Fire") [Rec. Doc. 107] and BMCC's Reply thereto [Rec. Doc. 116]. For the following reasons, BMCC's motion will be granted.

*I. Background*

Plaintiff, Beverly J. Carter ("Carter") alleges she sustained physical injuries on July 15, 2013, when she stepped on a rusty nail negligently left on the premises of the Somerset Apartments by Page Properties and Construction LLC ("Page"), an Alabama limited liability company.[1] *R. 1-2; R. 11 at ¶ 6.* As this motion was filed by BMCC, the Court will discuss only those facts pertinent to BMCC.

The Somerset Apartments in Youngsville, Louisiana, are owned by Youngsville, an Alabama limited liability limited partnership. BMCC, an Alabama corporation, was the general contractor that contracted with Youngsville for

---

[1] On December 7, 2016, Plaintiff filed an Amended Complaint against Page and Page's insurer, United Fire & Casualty Company ("United Fire").

construction, roofing and renovation work at the Somerset Apartments. *Id, Exh. A*. Page was the subcontractor of BMCC, that performed the work at the Somerset Apartments. *Id, Exh B; Exh C*, *R. 65-5, Admission Nos. 3, 4*. Certificates of Substantial Completion for the work at issue are dated December 22, 2013; January 10, 2014; April 18, 2014; July 22, 2014. *R. 65-4, Exh. D.*

The Subcontracts between Page and BMCC identifies BMCC as "Contractor," Page as "Subcontractor," and Youngsville as "Owner" (the "Subcontracts").[2] *R. 65-4, Exh B, p. 1*. The Subcontracts refer to the "Prime Contract" between Youngsville and BMCC dated August 28, 2013, and identify the "Project" as "the Renovations to Somerset Apartments." *Id.* United Fire was the general liability insurer of Page. Pursuant to the Subcontracts, Page was required to carry Completed Operations insurance coverage in the amount of $1 Million per occurrence, and to maintain said coverage for three (3) years after completion of the work. *Id. § 9.1 at p. 9*. In addition, pursuant to Section 9.5 of the Subcontracts, Page agreed to defend and indemnify the Contractor, BMCC, from claims arising out of or resulting from Page's performance under the subcontract, whether meritorious or not, and also agreed to insure all of the contractual indemnities contained therein. *Id, § 9.5*. Page also agreed to defend, indemnify, and hold BMCC harmless from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from Page's performance of the work. *1d., § 11.1*. Finally, the Subcontracts

---

[2] The record indicates there are four identical Subcontracts pertaining to the various renovations Page contracted to perform at Somerset Apartments. *R. 65-4.*

**2**

provided that they are governed by the laws of the state of Alabama. *Id, § 5.2 at p. 4.*

Prior to the removal of this litigation, Defendants filed a Third Party Demand against Page in the Fifteenth Judicial District Court proceeding. The Third Party Demand makes claims of additional insured status under a general liability policy, and contractual indemnity pursuant to the Subcontract agreements between Page and BMCC. *R. 65-4.* Subsequent to the removal of this litigation, BMCC filed a Cross-Claim naming Page and United Fire, making demands for additional insured status and indemnity demands.

## II. Contentions of the Parties

BMCC contends that, as General Contractor for Youngsville, it is entitled to defense, indemnification pursuant to the terms of the Subcontracts between BMCC, as General Contractor for Youngsville, and Page, for work performed on the premises which is alleged to be the source of the rusty nail that caused Plaintiff's injury. BMCC contends that Page agreed to defend and indemnify it from claims such as those asserted by Plaintiff in the instant case, and that the Subcontracts are governed by Alabama law which does not prohibit the provisions for defense, indemnity and insurance coverage contained therein. BMCC further contends that it is entitled to insurance coverage from United Fire pursuant to Section 9.1 of the Subcontracts.

Page argues that Louisiana law applies to the Subcontracts. Specifically, Page contends that Louisiana's anti-indemnity statute, La. R.S. 9:2780.1, applies and voids, as against public policy, the insurance and indemnity requirements contained in the construction Subcontracts.

As to BMCC's contractual indemnity contentions, United Fire states that genuine

issues of fact exist as to whether or not Plaintiff's claim arose out of Page's work. United Fire also argues that Louisiana law applies to the Subcontracts, and therefore, La. R.S. 9:2780.1 voids the additional insured provision of the Policy. Alternatively, United Fire contends that the allegations against Youngsville in Plaintiff's petition fail to "impute Page's fault to Youngsville" as required under the additional insured provision of the Policy.

### III. Summary Judgment Standard

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c). A genuine issue of fact exists only "[i]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248(1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the nonmovant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir.1997). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995). Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue

of material fact requiring a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir. 1992). "We do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000).

*III. Analysis*

The Subcontracts at issue in this matter contain an express choice-of-law provision which states, "This Subcontract shall be governed by the laws of the State of Alabama." *R. 65-4, § 5.2, p. 4.* BMCC filed this motion moving the Court to find that Alabama law should govern the Subcontracts. Page and United Fire argue that Louisiana law applies to the Subcontracts, and therefore, the application of Louisiana's Anti-Indemnity Statute, La. R.S. 9:2780.1, prohibits the defense and indemnification provisions in the Subcontracts.

The Court has previously addressed these same issues in the Motion For Summary Judgment filed by Youngsville and Morrow Reality Company, *R. 65*, and opposed by Page and United Fire, *R. 99, 106.* There, the Court held that because Alabama has the most pertinent contacts in this action, Alabama law applies to the contracts. As Louisiana has no interest in the application of its laws to this contractual dispute, La. R.S. 9:2780.1 is not applicable.[3]

---

[3] As the Court finds that Alabama rather than Louisiana law applies in this case, it need not address Page's argument as to Louisiana's public policy.

*A. Defense, Indemnity and Insurance Coverage*

Pursuant to the Subcontracts, Page was obligated to carry CGL insurance with the General Contractor, BMCC, to provide defense and indemnity and insurance coverage. Section 9.5 of the Subcontracts provides in pertinent part.

> 9.5. INDEMNIFICATION. The Subcontractor agrees to assume the entire responsibility and liability for all damages or injury to all persons, and to all property, arising out of or in any manner connected with the execution of the Work under this Subcontract and to the fullest extent permitted by law, <u>the Subcontractor shall defend and indemnify the Contractor from all such claims, whether meritorious or not</u>, allegations of its own independent negligence or the alleged negligence of others, <u>including without limitation claims for which the Contractor may be or may be claimed liable by reason of allegations of its own independent negligence</u>.
>
> The Subcontractor agrees to assume entire responsibility and liability for all damages or injury to all persons, whether employees or otherwise, and to all property arising out of or in any manner connected with the execution of the Work under this Subcontract.
>
> The Subcontractors obligation under this section shall not be limited in any way by any limitations on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under workers or workmen's compensation acts, disability benefit acts or other employee benefit acts.
>
> <u>The Subcontractor shall defend and indemnify the Contractor from all such claims, whether meritorious or not</u>, including without limitations, claims for which the Contractor may be or may be claimed to be liable in whole or in part, and legal fees and disbursements paid or incurred to defend any such claims, as well as legal fees paid or incurred in connection with enforcing the provisions of this section.
>
> The Subcontractor further agrees to obtain, maintain and pay for such general liability insurance coverage as will insure the provision of this section and other contractual indemnifications assumed by the Subcontractor in the Subcontract.

*R. 79-1, Exh. B.* Thus, Page's obligations are triggered even for BMCC's own negligence and whether or not the claims against Page and BMCC are meritorious. *Id.*

**6**

The undisputed material fact that Plaintiff has made a claim against BMCC and that Plaintiff's claim arises out of or is connected with the execution of Page's work under the Subcontracts with BMCC triggers Page's obligations.

In Section 9.6 of the Subcontracts, Page also agreed to a waiver of subrogation against BMCC:

> 9.6 WAIVER OF SUBROGATION. *Subcontractor waives all rights against Contractor*, Owner, Architect, and their agents, officers, directors and employees for recovery of damages to the extent these damages are covered by commercial general liability [ . . . ] insurance maintained per requirements stated above.

*Id.*

Section 11.1 of the Subcontract provides for additional indemnity obligations owed by Page to BMCC and others:

> 11. INDEMNIFICATION
>
> 11.1. To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless the Owner, Contractor, Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), caused in whole or in part by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this section.

*Id.*

Under long-standing Alabama law, contracts "should be construed as written," and that policy generally applies to indemnity contracts. *Holcim (US), Inc. v. Ohio Cas. Ins. Co.,* 38 So.3d 722, 727 (Ala. 2009) (quoting *Shoney's LLC v. MAC East, LLC,* 27 So.3d 1216, 1223 (Ala.2009)). The Supreme Court of Alabama has also recognized that:

> The Court has, for many years, held that as between private parties, indemnity contracts are enforceable if the contract clearly indicates an intention to indemnify against the consequences of the indemnitee's negligence, and such provision was clearly understood by the indemnitor, and there is not shown to be evidence of a disproportionate bargaining position in favor of the indemnitee.

*Holcim (US), Inc.* (quoting *Industrial Tile, Inc. v. Stewart*, 388 So.2d 171, 175 (Ala.1980)). "This rule includes the enforcement of a valid indemnity agreement that requires an indemnitor to indemnify an indemnitee for the indemnitee's own wrongdoing: '[I]f the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, then such agreements will be upheld.'" *Id.* (quoting *Industrial Tile*, 388 So.2d at 176).

Thus, with regard to indemnification for the indemnitees' own negligence, the only condition is that "the intention to indemnify the negligence of the indemnitee must clearly appear from the wording of the instrument, but when that intention is clear, the indemnity provisions will be read and construed so as to give them the meaning

8

the parties have expressed." *Holcim (US), Inc.* at 728 (quoting *Eley v.Brunner–Lay Southern Corp.*, 289 Ala. 120, 124, 266 So.2d 276, 280 (1972) (overruled on other grounds)).

The Court finds that BMCC is entitled to contractual defense, indemnity and insurance coverage from Page as Plaintiff's claims arise out of and are connected with the execution of Page's work under the Subcontracts, whether meritorious or not, including claims for BMCC's own independent negligence. *R. 79-4, § 9.5.*

*B. Additional Insured*

Section 9.1 of the subcontract contains the following provision requiring Page to carry Commercial General Liability insurance and to name the General Contractor, BMCC, as an additional insured, with that coverage being primary to BMCC's own coverage:

> 9.1. Commercial General Liability (CGL). Subcontractor shall carry CGL with limits of insurance of not less than $1,000,000 Each Occurrence, $2,000,000 Products/Completed Operations Aggregate, $1,000,000 Personal & Advertising Injury, $100,000 Fire Damage Limit (any one fire), $5,000 Medical Expense (any one person) and $2,000,000 General Annual Aggregate. If the CGL coverage contains a General Aggregate Limit, such General Aggregate shall apply separately to each project.
>
> CGL coverage shall be written on ISO Occurrence form CG 00 01 1093 or a substitute form providing equivalent coverage and shall cover liability arising from premises, operations, independent contractors, products-completed operations, and personal and advertising injury.
>
> <u>General Contractor, Owner and all other parties required of the General Contractor, shall be included as insured on the CGL, using ISO Additional Insured Endorsement CG 20 10 11 85 or CG 20 33 10 01 AND CG 20 37 10 01 or an endorsement providing equivalent coverage to the additional insureds</u>. This insurance for the additional insureds shall be as broad as the

coverage provided for the named insured Subcontractor. <u>It shall apply as primary and non-contributory insurance before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured</u>.

Subcontractor shall maintain CGL coverage for itself and all additional insureds for the duration of the project and maintain Completed Operations coverage for itself and each additional insured for at least three (3) years after completion of the Work.

*R. 79-1, Exh. B.*

Agreements to procure insurance are generally enforceable under Alabama law, and a party who breaches such an agreement is liable for damages resulting from the failure to obtain the promised insurance. *Goodyear Tire and Rubber Co. v. J.M. Tull Metals Co.*, 629 So. 2d 633, 639 (Ala. 1993) (citing *Turner v. Deutz–Allis Credit Corp.*, 544 So.2d 840, 844 (Ala.1988); *James E. Watts & Sons Contractors, Inc. v. Nabors*, 484 So.2d 373, 375 (Ala.1985)).

The record indicates that Page secured the required coverage and United Fire issued a commercial general liability policy ("the Policy") to Page effective between February 19, 2015, and February 19, 2016. *R. 79-1, Exh F, p. 3*. The Policy provides coverage for damages assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" occurs subsequent to the execution of the contract or agreement." *Id, at p. 13*. The Policy defines "insured contract" as "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization." *Id at p. 24*.

The Policy also contains a "Contractors Blanket Additional Insured–Limited

Products-Completed Operations Coverage" endorsement ("Endorsement"). *Id, at p. 55*. The Endorsement supersedes any inconsistent policy language, and renders "any person or organization whom you are required to add as an additional insured on this policy under a written contract or agreement" an Additional Insured if the agreement is currently in effect or becomes effective during the term of the Policy and was executed prior to the "bodily injury" or "property damage". *Id*. Thus, coverage under the Endorsement does not apply to liability arising out of the "products completed operations hazard" subsequent to the expiration of the period of time specified by the Subcontracts. *Id*. The Policy defines "products completed operations hazard" as including "all 'bodily injury' or 'property damage' occurring away from the premises you own or rent and arising out of 'your product' or 'your work' except where the work has not been completed as further defined by the Policy. *Id, at p. 26*.

The Subcontracts were executed on September 6, 2013. *R. 65-4, p. 1*. Certificates of Substantial Completion for the work at issue are dated December 22, 2013; January 10, 2014; April 18, 2014; July 22, 2014. *R. 79-1, Exh D in globo*. Plaintiff alleges that her injury occurred on July 15, 2015. *R. 1-2*. United Fire's policy was effective between February 19, 2015, and February 19, 2016. *Id., Exh E, p. 3*.

In its Opposition Memorandum, United Fire argues that the allegations against BMCC in Plaintiff's petition fail to impute Page's fault to BMCC as required under the additional insured provision of the Policy. The additional insured endorsement provides in relevant part:

1. B. The addition insured status will apply only with respect to your liability for "bodily injury" or "property

**11**

> damage" : which may be imputed to that person(s) or organization(s) directly arising out of "your work" at the location designated and described in the written contract or written agreement performed for that additional insured and only for that liability included in the "products-completed operations hazard".

*R. 106-1.* United Fire contends that the foregoing language requires that United Fire insure BMCC only for damages "imputed" to BMCC "directly arising out of" the work of Page. *R. 106, p. 5.* It further contends that Plaintiff's original and amended petitions against BMCC do not allege any facts which would impute any liability of Page to BMCC. Rather, United Fire argues, Plaintiff's allegations assert that BMCC is liable only for its own independent acts of negligence.

Plaintiff alleges that Page performed construction and roofing work and negligently left behind roofing nails, one of which caused Plaintiff's injury. *R. 11, ¶¶ 6, 7.* Plaintiff expressly alleges that her injury arises out of and results from Page's work under the Subcontract. *Id, ¶¶ 3-6.* This allegation that Page negligently left the nail at issue on the premises while performing roofing work is sufficient to satisfy the additional insured endorsement under the Subcontract. *See Walter L. Couse & Co. v. Hardy Corp.*, 274 So. 2d 322 (Ala. 1973); *Black Diamond Coal Min. Co. v. USX Corp.*, 581 So. 2d 839 (Ala. 1991); *Doster Const. Co., Inc. v. Marathon Elec. Contractors, Inc.*, 32 So.3d 1277, 1284-85 (Ala. 2009).

In support of its position, United Fire cites *Colony National Ins. Co. v. United Fire & Casualty Co.*, 677 Fed. Appx. 941 (5th Cir. 2017). In *Colony*, the court found there to be sufficient liability imputed to the general contractor who had

authority over the jobsite and authority to enforce requirements of the subcontract. *Id* at 945-46. United Fire contends there is no correlative law in Louisiana which would render BMCC responsible to Plaintiff for failing to supervise Page. The Court disagrees. BMCC, as the general contractor, party to the general contract and third-party beneficiary to the Subcontract, had similar authority.

Plaintiff contends that Page was contractually obligated to keep the premises and surrounding areas free from the accumulation of waste materials or rubbish caused by operations performed under the Subcontract. It is the breach of this duty that is now being imputed to BMCC—had Page successfully performed this obligation, Plaintiff would not have been injured. Page, came onto the Somerset premises on contract with BMCC, and allegedly created a condition that caused Plaintiff's injury. BMCC's alleged constructive knowledge imputes the negligence of Page to BMCC. Accordingly, BMCC is entitled to insurance coverage from United Fire in connection with the claims of Plaintiff.

*C. Excess Insurance*

United Fire asserts it is undisputed that under the Subcontracts "any additional insured coverage provided by Page would be primary." *R. 107, p. 10*. Therefore, it further asserts, "the last sentence of the other insurance clause" in the Contractor's Blanket Additional Insured Contract Endorsement applies in this case.[4] The "Other

---

[4] United Fire does not cite to any evidence nor any exhibit to identify the "other insurance clause." The Court therefore assumes United Fire's reference is to Rec. Doc. 107-1, p. 55,

Insurance" provision in the Policy states:

4. Other Insurance

b. Excess Insurance

This insurance is excess over:

Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a written contract or written agreement in effect during this policy period and signed and executed by you prior to the loss for which coverage is sought specifically requires that this insurance apply on a primary or primary and non-contributory basis. When this insurance is primary and there is other insurance available to the additional insured from any source, we will share with that other insurance by the method described in the policy.

*R. 107-1, § 4.b.(1)(b)*. Based on the foregoing language, United Fire contends that in order to determine its obligation to defend BMCC, "the Court must compare the other insurance clauses in each policy"—the United Fire Policy and any other insurance policy available to BMCC. Because BMCC's insurer has not been named in this lawsuit, United Fire argues "the Court is unable to determine which insurance coverage is primary and/or how the defense cost are to be shared amount the insurers." *R. 107-1, pp. 10-11*.

While United Fire provides no support for its position that *the Court* must determine the issue it contends exists as to primary coverage, the Court finds it is United Fire which has this responsibility.[5] The Court need only determine whether

---

Section 4. b. (1)(b).

[5] The Court notes that Section 9.1 of the Policy provides that Page's obligation of making BMCC an Additional Insured, "shall apply as primary *and non-contributory insurance* before any other insurance or self-insurance, including any deductible, maintained by, or provided

or not United Fire must defend BMCC. As the Court has found that the claims in this lawsuit arise out of or are connected with the execution of Page's work under the Subcontracts with BMCC, United Fire must defend and indemnify BMCC even for BMCC's own negligence and regardless of whether the claims have merit. *R. 79-4, § 9.5.*

## *IV. Conclusion*

Based on the foregoing, the Court finds that BMCC is owed contractual defense, indemnity and insurance coverage from Page and its insurer, United Fire.

THUS DONE AND SIGNED this 25th day of May, 2018, at Lafayette, Louisiana.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

---

to, the additional insured." *R. 79-1, § 9.1.*