# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Carter | Civil Action No. 16-01496 |
| versus | Magistrate Judge Carol B. Whitehurst |
| Youngsville II Housing LLLP et al | By Consent of the Parties |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by Youngsville II Housing LLLP ("Youngsville"), Morrow Realty Company ("Morrow Realty") and Ironshore Specialty Insurance Company ("Ironshore") (collectively "Defendants") [Rec. Doc. 70] and an opposition to Defendants' Motion filed by Plaintiff, Beverly J. Carter ("Carter") [Rec. Doc. 76]. For the following reasons, Defendants' motion will be denied.

### *I. Background*

The Somerset Apartment complex (sometimes referred to as "the complex") in Youngsville, Louisiana, is owned by Youngsville and managed on behalf of Youngsville by Morrow Realty. Plaintiff, a tenant at the complex, alleges she suffered serious injury on July 15, 2015, when she stepped on a rusty nail in a flowerbed on the complex premises. She further alleges that the nail was negligently left on the premises by Page Properties and Construction, LLC, ("Page") the roofing subcontractor hired by Bob Morrow Construction Company ("BMCC"), the General Contractor who contracted with Youngsville to perform various renovations at the complex and that the nail persisted on the premises due to the negligence of Youngsville and Morrow Realty.

In or around 2013 and/or 2014, BMCC was contracted by Youngsville to perform renovations and construction work on the Somerset Apartment complex, including *inter alia* roofing work, carpentry work and demolition ("the Work"). BMCC contracted with Page to perform the Work. Plaintiff alleges that BMCC and Page left various roofing nails and/or roofing tacks strewn about the premises of the apartment complex after they completed the Work. Plaintiff further alleges Youngsville and Morrow Realty failed to exercise reasonable care by failing to inspect and safely maintain the premises of the apartment complex, and knew or should have known of the existence of loose nails and/or roofing tacks on the premises of the apartment complex. Plaintiff alleges, as a result of this incident, she suffered a puncture wound and infection (cellulitis) in her left foot which required extended hospitalization including a surgical procedure on July 25, 2015.

Plaintiff filed this action in the Fifteenth Judicial District Court, Parish of Lafayette for the injuries she sustained against Youngsville, Somerset Apartments, and Morrow Realty. *R. 1-2*. On October 26, 2016, the action was removed to this Court. *R. 1*. Plaintiff filed a First Amending Complaint on December 7, 2016 naming BMCC, Page and Ironshore. BMCC filed a cross-claim against Page and its insurer, United Fire and Casualty Company ("United Fire"). *R. 37*. Thereafter, Youngville, Morrow Realty and Ironshore filed a cross-claim against United Fire. *R. 43*.

## II. Contentions of the Parties

Defendants move for summary judgment contending that Plaintiff's claims against them should be dismissed on grounds that Plaintiff cannot establish the

essential elements of her claim because she cannot meet her burden of proof under La. C.C. 2317.1. They contend that Plaintiff cannot establish that Youngsville or Morrow Realty failed to exercise reasonable care with regard to the nail in the flowerbed because: (1) the nail was caused by Page's roofing work and Page's failure to exercise reasonable care; (2) it was unforeseeable that a nail from a previous roofing job would be unearthed during landscaping; and (3) the Subcontracts obligated Page to perform clean-up of the site and BMCC was tasked with supervision and clean-up. Defendants further contend that Plaintiff cannot show that they knew or should have known of the nail in the flowerbed because: (1) the nails Plaintiff found on the premises were in the parking lot and were not roofing nails; (2) Defendants were entitled to rely upon the assurance of the construction contractors that magnets would be passed over the premises to pick up errant nails; and (3) Defendants could not have known of the roofing nail in the flower bed which was unearthed by landscaping subsequent to the roofing work.

Plaintiff argues that at the time the renovation and construction work was on-going at Somerset Apartment complex, Youngsville and Morrow Realty knew of the existence of nails on the premises but failed to exercise reasonable care pursuant to Plaintiff's Lease Agreement. In particular, Plaintiff contends that Defendants did not employ a maintenance man for the complex, Morrow Realty did not perform visual inspections of the flowerbed even though Defendants knew that residents worked in the beds and neither Youngsville nor Morrow Realty inspected the flowerbeds or complex grounds during the time that the Work was ongoing.

*III. Summary Judgment Standard*

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations..., admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof

at trial." *Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) The Court does "not...in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393-94 (5th Cir.2000). Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion." *Boudreaux v. Banctec, Inc.*, 366 F.Supp.2d 425, 430 (E.D. La. 2005).

"The use of summary judgment is rarely appropriate in negligence cases, even where the material facts are not disputed. As the Fifth Circuit has explained:

> Because of the peculiarly elusive nature of the term "negligence" and the necessity that the trier of facts pass upon the reasonableness of the conduct in all the circumstances in determining whether it constitutes negligence, it is the rare personal injury case which can be disposed of by summary judgment, even where the historical facts are concededly undisputed.

Thus, a court will grant summary judgment in a negligence case only in rare circumstances." *Parekh v. Argonautica Shipping Investments B.V.*, 2018 WL 295498, at *4 (E.D.La., 2018).

## IV. Analysis

Defendants contend and Plaintiff does not dispute that the issues raised by Plaintiff's accident are governed by Art. 2317.1 of the Louisiana Civil Code. This article provides in pertinent part:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

5

Thus, Plaintiff is required to prove that the owner or custodian of the complex knew or should have known of the defect that caused her damages, that the damage could have been prevented by the exercise of reasonable care, and that the owner failed to exercise such reasonable care. *See, e.g., Heflin v. American Home Wildwood Estates, L.P.*, 936 So.2d 226 (La.App. 2 Cir. 7/12/06). A defect under Art. 2317.1 is a condition creating an "unreasonable risk of harm." *Johnson v. City of Monroe*, 870So.2d 1105 (La.App. 2 Cir. 4/7/04).

*A. Whether Youngsville and BMCC Failed to Exercise Reasonable Care*

Defendants assert that Plaintiff cannot establish that Youngsville or Morrow Realty failed to exercise reasonable care as required under 2317.1. They contend that the logical conclusion under the facts of this case is that the nail at issue was in the flowerbed as the result of Page's roofing work and that Page failed to remove the "errant nails" left after the work was completed.

Defendants cite the Subcontracts between BMCC and Page related to Page's clean-up duties:

> The subcontractor [Page] shall keep the premises and surrounding areas free from the accumulation of waste materials or rubbish caused by operations performed under this Subcontract.

and:

> [S]hall seek to avoid injury, loss, or damage to persons or property by taking reasonable steps to protect: all property and structures at the site or adjacent to work areas, whether or not said property or structures are part of the Project or involved in the Contract work.

*R. 70-6, §§ 7.13.1; 7.14.1; 7.14.1.3, p. 7.*

**6**

Based on these provisions of the Subcontract, Defendants contend that, if the roofing nail which caused Plaintiff's injury arises from the work of Page, it was Page's breach of duty that caused Plaintiff's injury. Defendants also contend that BMCC, as General Contractor, was tasked with supervision of the site and clean-up procedures. *R. 70-4, Depo. of Martin, pp. 40-41.* They argue that these contractual obligations of Page and BMCC to Youngsville, Morrow Realty and its tenants constituted reasonable steps to ensure the safety of tenants on the premises.

Defendants also contend that Page will likely assert that the subject nail came to be in the flowerbed after being unearthed by landscaping performed subsequent to the work. They cite Plaintiff's deposition in which she stated that after the roofing work at issue had been completed, "two bushes that had been there 30 years" were dug up, and dirt from that job was spread over the flowerbeds. *R. 70-5, Depo of Carter, p. 28*. They note that Plaintiff stated that the roofing nail at issued looked like "it's been under dirt for a good while." *Id. at p. 29*. Casey Martin, a project manager for BMCC, testified that he believed the condition of the subject roofing nail did not match up with the time frame of the roofing project at issue. *R. 70-4, Depo. of Martin, pp. 36, 48-49*.

In the event Page asserts the foregoing defense, Defendants argue they could not have anticipated an injury caused by a twenty to thirty year old nail which was excavated when shrubbery was removed. They maintain that because negligence requires the risk be both foreseeable and unreasonable, they cannot be charged with negligence in failing to provide against injury under such facts. *May v. Mitchell*

7

*Bros., Inc.*, 712 So.2d 622, 624 (La.App. 1 Cir. 5/15/98).

Defendants further contend that the Somerset Apartment complex on-premises Resident Manager for Morrow Realty, Midge Duhon, indicated in her deposition that upon learning that tenants were finding nails on the premises, she reported the finding to the construction crew so they could search for errant nails using the "magnetic device." *R. 70-3, p.33*. Duhon stated that they used the magnetic device "constantly." *Id*. Defendants contend that the nails Plaintiff and other tenants found were during the renovation, were located in the driveway and parking lot and were not nails used in roofing. *Id. at p. 35-36, 45-46*. Plaintiff stated she did not notice any nails in her flowerbed prior to the date of her injury, but afterwards she observed many nails in the flowerbed. *Id. at p. 28, 72-73*. Plaintiff stated that she could not see the nails nor did she believe the magnetic device would have picked them up because after the landscaping dirt and straw covered them. *R. 70-5, pp. 29, 35*.

Based on the foregoing testimony, Defendants assert that they took reasonable steps to ensure that the complex premises were safe and they could not have reasonably done any more. They further assert that the facts set forth above establish that Plaintiff is unable to show that either Youngsville or Morrow Realty knew or should have known of the nail in the flowerbed.

Plaintiff disputes Defendants' interpretation of the foregoing testimonies of Duhon and Plaintiff. Plaintiff asserts that Duhon stated the following as to Defendants' actions and/or inactions regarding the renovation project at the Somerset Apartment complex:

A: see I didn't have a maintenance person during the rehab. I didn't have one here.

Q: Describe for me the duties of the maintenance person.

A: The maintenance person is to keep up the grounds. Now we have a lawn service but he is to keep up the grounds, blowing, he has to do the property and the sidewalks and whatever. . . .

Q: What about cleaning or maintaining the flowerbeds at the apartment?

A: See, it's hard to tell because at the time of the rehab I didn't have a maintenance man. Now the maintenance man here will tend to the flowerbeds. You know, he's putting mulch in the flowerbeds. . . .

Q; Does anyone from Morrow Realty whether it be you or the maintenance man, ever do visual inspections of the flowerbeds to see if there is any nails or glass or anything like that?

A: No. No.

Q: Ms. Duhon, when she'd [Beverly Carter] come to you with those nails and talk to you about finding them and stuff - - the Nail Lady she was called.

A: Uh huh (affirmative response).

Q: Would you make a note of it anywhere?

A: No. Like I said, if the contractors were still there I would tell them to be a little bit more careful or whatever. And then after that like I said I wasn't in the office a whole bunch after that.

Q: After that. But during that time period you had noticed that there were nails being found in various places by various residents, correct?

A: Yes.

Q: Did the company ever ask you to send out a notice to all the residents to be very careful about, that there were nails out or nails around or anything?

A: I don't remember that but I don't think they did.

9

> Q: I say the company I mean your employer.
>
> A: Yes.
>
> Q: Or the contractor? Or any of the people working there?
>
> A: I don't remember doing that.
>
> Q: Doing that - - or seeing them post notices [or] give handouts to watch for nails?
>
> A: I don't remember that.

*R. 76-2, pp. 18-19, 49, 69-70.*

Plaintiff argues that Duhon's testimony establishes that at the time of the renovation project at the complex Defendants failed to exercise reasonable care as to the safety of their tenants/residents. Defendants had no maintenance man. Thus, even though they knew residents such as Plaintiff would often work in the flowerbeds, Defendants failed to tend to the flowerbeds or inspect the grounds or flowerbeds—even during the time when a major renovation construction project was going on. Despite receiving multiple complaints and proof of loose nails on the premises prior to Plaintiff's incident, Defendants failed to provide notice or warnings of any type to their tenants/residents.

The Court finds genuine disputes of material fact exist as to whether or not Defendants exercised reasonable care under the circumstances of this case.

*B. Whether Defendants Knew or Should Have Known*

Plaintiff contends that she had permission to work in the flowerbed, testifying in her deposition as follows:

> Q: What was your understanding as far as you being allowed to work in this

> flower bed?
>
> A: That is was fine.
>
> Q: And who told you that you were allowed to garden in this bed?
>
> A: Well, Midge, for one, because I always ask her, you know - - he knows her last name. I can't tell you.
>
> Q: At any time, did anyone ever tell you that you should not work in the flower bed?
>
> A: No.
>
> Q: Did I understand that you to say that you had asked permission to be able to work in the flowerbeds?
>
> A: Yes.
>
> Q: And who did you ask?
>
> A: Midge. She said sure. And now we got everybody just about doing it.

R. 76-3, pp. 63-64, 96.

Plaintiff notes that her testimony stated above conflicts with that of Duhon as to whether Plaintiff had the permission of Duhon/Defendants to work in the complex flowerbeds. She contends that at the very least Defendants tacitly or impliedly consented to her working in the flowerbeds based on Duhon's testimony:

> Q: During her deposition Ms Carter told us that she had permission to work in her flowerbeds from you. Do you disagree with that?
>
> A: I do.
>
> Q: According to the rules of the complex, is Ms. Carter supposed to be working in that flowerbed, or is she prohibited from working in that flowerbed?
>
> A: Well I told - - I was told, and it is on the rules, about the yard. You know, you're not to walk in the yard. You're not to walk on the grass.

**11**

> You're not to make footpaths. As far as the flowerbeds, I'm not quite sure how the rules state that, but I would tell them that the flowerbeds were off limits, you know. But I never did put the issue with Ms. Carter because she loved doing that. She's an older lady, and she just would be in her beds all the time, and I would just tell her, you know, Ms. Beverly, be careful because you just don't know what's in there, you know. But I never said anything about a nail or anything like that you know. I don't know. That's as far as that went.

Q: I gather everybody kinda knew Beverly worked in her garden - - we've been using the word garden and sometimes flowerbed. We are talking about the same thing?

A: Yes.

Q: Do you know why they did not want people walking on the grass? Why the company management didn't want them walking on the grass?

A: They didn't want any foot paths to be made - -

Q: Wearing out the grass - -

. . .

Q: That wouldn't apply to flowerbeds though? There is not walking paths there?

A: No there is no walking paths.

Q: And you don't recall a specific rule that - -

A: I don't remember what the rule said - -

Q: But regardless of the rule though did you ever have to write Beverly up?

A: No I didn't.

Q: You didn't. You know of anybody who did?

A: Don't know that. Don't know.

Q: Do you recall anybody saying they were going to write her up?

A: No, sir.

> Q: Do you recall anybody with the company or above you saying they didn't want her doing that?
>
> A: No, sir.
>
> Q: Pretty common knowledge with other residents that Beverly Carter had her little garden?
>
> A: Yes.

*R. 76-2, pp. 42, 49, 63-65.*

Plaintiff argues the fact that she was allowed to work in the flowerbeds and Defendants did nothing to assure that she would be safe while doing so, contradicts their statement that "all Defendants acted reasonably to ensure the safety of tenants." *R. 70-2, p. 7.* She contends that the foregoing testimony creates a genuine dispute of material fact. The Court agrees.

Plaintiff cites her December 22, 2013 Lease Agreement, ¶15, MAINTENANCE AND REPAIR BY LANDLORD, which states as follows:

> Landlord is obligated to maintain the buildings and unassigned community areas of the Property *in a reasonably safe and sanitary condition* in accordance with applicable governmental housing codes. Rural development regulations and applicable laws of the State where the Property is located.

*R. 76-4, pp. 6-7 (emphasis added).* Plaintiff argues that even though Defendants argue that Page and BMCC were tasked with cleaning, inspecting and making safe the premises of the complex, such requirements do not relieve Defendants as landlords/lessors from their duty to maintain their premises in a safe condition, pursuant to the Lease Agreement. Their own failure to provide maintenance and inspection of the premises, including the flowerbeds, fails to comply with the terms

13

of the Lease Agreement. Such failure to provide maintenance and inspection of the premises knowing that residents such as Plaintiff were working and traversing the flower bed during a major renovation of the complex questions their reasonableness.

As to Defendants' contention that they did not know nor should have known of the existence of the nails in the flowerbeds, Plaintiff argues there is no dispute that the residents, including Plaintiff, reported finding nails on the premises during the renovation. Regardless of whether a heightened degree of care should have been triggered by this notice, the facts establish that Plaintiff was allowed to continue to traverse and work in her flowerbed. Arguing that they did every reasonable thing they could do to deal with the nails, Defendants contend that their contractors used a magnetic device to remove errant nails in all areas of the premises. Plaintiff's testimony that she and the other tenants continued to find nails over the premises disputes this contention. Moreover, Duhon testified that the magnetic device could not have been run in Plaintiff's flowerbed because of all of Plaintiff's flowers. *R. 76-2, pp. 66-67.* As to Defendants statement that their representatives followed-up "to ensure that the contractors continued to search for such nails," *R. 70-2, pp.10-11,* Duhon, their representative at the complex, testified that after being notified of tenants finding the nails she would tell the contractors "to be a little bit more careful," but she "wasn't in the office a whole bunch." *R. 76-2, pp. 69-70.* This testimony creates a dispute of material fact as to whether or not Defendants acted reasonably in light of the alleged information as to the nails that they presumably should have known.

The Court will not address Defendants' "Landscaping Theory" as no evidence as required by Rule 56 has been presented in that respect. Duhon, the on-premises resident manager for Morrow Realty testified that she did not remember if a landscaping company removed bushes from the flowerbeds in front of Plaintiff's apartment building. *R. 76-2, p. 57*. Plaintiff, however, testified that Defendants "had some of the beds landscaped . They didn't get to ours...." *R. 76-3, pp. 36-37*. Nor is there any evidence as to the discovery of nails during the time after the bushes were alleged removed. Finally, there is no evidence as to the identity of a "landscaping company" or any contract/agreement between a "landscaping company" and any of the defendants. As such, the Court finds the "Landscaping Theory" is not an issue before it.

In a case based on circumstantial evidence such as this one, it is a well-established legal principle that the Court must draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party—Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir.2010). Plaintiff has established that the genuine issues of material fact exists as to whether Defendants failed to exercise reasonable care in dealing with the nail issue created by the renovation project of the Somerset Apartment complex. Plaintiff has further established that a genuine dispute of material fact exists as to whether Defendants knew or should have known of the nail issue.

### *V. Conclusion*

Based on the foregoing, the Court will deny the Motion for Summary Judgment

filed by Youngsville II Housing LLLP, Morrow Realty Company and Ironshore Specialty Insurance Company [Rec. Doc. 70].

**THUS DONE AND SIGNED** at Lafayette, Louisiana this 6th day of June.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**