# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Carter | Civil Action No. 16-01496 |
| Versus | Magistrate Judge Carol B. Whitehurst |
| Youngsville II Housing LLLP et al | By Consent of the Parties |

## ORDER AND RULING

Before the Court is a Motion To Dismiss (Punitive Damages) filed by filed by United Fire and Casualty Company ("United Fire") [Rec. Doc. 163], a Memorandum in Opposition filed by Youngsville II Housing LLLP ("Youngsville") [Rec. Doc. 168], United Fire's Reply [Rec. Doc. 173] and Youngsville's Sur-reply [Rec. Doc. 176]. For the following reasons, United Fire's motion will be denied.

## I. Background

The background and procedural history of this action have been set forth previously and will not be repeated at length. It is sufficient to note that United Fire issued a Commercial General Liability (CGL) policy ("the Policy") to Page Properties & Construction L.L.C. ("Page"). Page contracted with Bob Morrow Construction Company ("BMCC"), a general contractor for Youngsville, to perform roofing work at Youngsville's Somerset Apartments. Under the provisions of the subcontract between Page and BMCC, Page was required to name Youngsville and

BMCC as additional insureds on the Policy. The Court has held in prior rulings on summary judgment that Alabama substantive law applies to the contracts and the allegations in the plaintiff's complaint are sufficient to find that United Fire is obligated to defend Youngsville, its additional insured under the Policy, regardless of the ultimate liability of the Insured.

Youngsville and its CGL insurer, Ironshore Specialty Insurance Company ("Ironshore")[1] filed a Cross-claim against United Fire on April 21, 2018, and an Amended Cross-claim on July 30, 2018. *R. 43, 148.* Youngsville alleges in its Amended Cross-claim: Prior to August 25, 2016, Youngsville notified United Fire of this law suit and tendered its demand and coverage position to United Fire's counsel. *R. 148, ¶9.* On December 12, 2016, Plaintiff filed an Amended Complaint asserting that her injuries arose from the Insured's negligence and Youngsville informed counsel for United Fire of its intent to file a Cross-claim on the insurance, defense and indemnity issues on April 12, 2017. *Id. at ¶¶ 10, 11.* Based on United Fire's counsel's response that "there was no contractual relationship between Youngsville and [its insured]," Youngsville submitted United Fire's contracts with the insured by April 27, 2017. *Id. at ¶¶ 11,12.* United Fire refused to defend Youngsville without any determination as to whether there was a lawful basis to do so. *Id. at ¶ 14 (erroneously labeled as a second ¶ 11).* Youngsville contended that

---

[1] Defendant Morrow Realty Company, Inc. also joined in filing the Cross-claim. *R. 43.*

United Fire breached its contract to defend it in this lawsuit, which caused and continues to cause Youngsville substantial litigation expense and monetary loss. *Id. at ¶¶ 19, 20 (erroneously labeled as a second ¶¶ 16, 17).* Youngsville further contended that it is entitled to punitive damages under Alabama based on United Fire's alleged breach of its duty to defend Youngsville. *Id. at ¶ 18.*

United Fire filed the instant motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on September 20, 2018. *R. 167.* In ruling on a motion to dismiss, the court generally "must not go outside the pleadings." *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir.2003). However, the court may consider documents attached to a motion to dismiss that "are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Id.* Here, United Fire has attached a number of exhibits to its motion. *R. 163, 3-22.* In addition to a copy of the Ironshore Policy, the attached documents primarily reflect billing invoices submitted by Youngsville to Ironshore for payment of defense of this action. As the Amended Cross-claim references United Fire's alleged refusal to defend Youngsville under the Policy as well as Youngsville's resulting litigation expenses and monetary loss and are, in fact, central to the Cross-claim, the Court finds these documents do not require that this motion be converted to a motion for summary judgment under Rule 56. Moreover, the Court does not rely on these documents in this ruling.

3

## II. Contentions of the Parties

In its motion to dismiss, United Fire contends that the Court's ruling on Youngsville's motion for summary judgment "is not final and can be changed at any time prior to final judgment" because "the [] Court is free to reconsider and reverse its decision for any reason it deems sufficient" under Rule 54(b).[2] *R. 163-2, p.1*. On that basis, United Fire asserts that it does not owe any defense cost or other damages to Youngsville until a final judgment is rendered. Thus, it further asserts, Youngsville has no right to recover any costs of defense, nor any punitive damages for United Fire failing to pay defense costs. United Fire also contends that because Ironshore, Youngsville's insurer, has actually paid Youngsville's defense costs pursuant to the Ironshore policy, Ironshore is subrogated to any rights Youngsville may have against United Fire for defense costs paid to date and therefore Youngsville's claim against United Fire is unenforceable. Finally, United Fire asserts that Louisiana law applies to the claim for punitive damages and an award for punitive damages is not authorized for insurance claims under La. C.C. art. 3546.

Youngsville argues that Ironshore's payments of defense costs to Youngsville under its policy with Youngsville is a collateral source which cannot be used by United Fire to reduce its damages or defeat its claim for breach of contract against

---

[2] The Court finds this statement puzzling in light of the Court's denial of United Fire and Page's Motion f
For New Trial and/or Motion For Reconsideration, *R. 126, 127, 134, 146*.

4

United Fire. Youngsville further argues that it will continue to suffer monetary loss as a result of United Fire's refusal to pay defense costs pursuant to the Policy. Finally it argues that Alabama rather than Louisiana law governs its entitlement to punitive damages, and under Alabama law punitive damages are recoverable for an insurer's bad faith conduct towards its insurer.

### III. Motion To Dismiss Standard

A Rule 12(b)(6) motion is not the proper vehicle for the resolution of factual disputes. In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its review to the face of the pleadings. *See Spivey*, 197 F.3d 772, 774 (5th Cir. 1999).To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009. But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Iqbal*, 129 S.Ct. at 1949–50. It need not contain detailed

factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

Rule 14 provides that defenses, cross-claims, and counterclaims must be filed in accordance with Rules 12 and 13. *See* Fed. R. Civ. P 14(a). Under the definition of Rule 7, a third-party complaint, like an original complaint, is a pleading whose form is prescribed by Rule 8. *See* Fed. R. Civ. P. 7. Thus, a cross-claim is subject to the same liberal rules of construction as an original complaint. At this stage, the Court must accept as true, the allegations contained in the "complaint" before it— the Amended Cross-claim filed by Youngsville.

### III. Analysis

In its prior ruling on Youngsville's motion for summary judgement, *R. 123,* the Court held that Page contracted to obtain a CGL policy for itself and its additional

insureds, including Youngsville ("the Contract").[3] Significantly, the Contract expressly provided insurance coverage "for the additional insureds [Youngsville and BMCC] as broad as the coverage provided for the named insured Subcontractor [Page]. It shall apply as primary and non-contributory before any other insurance or self-insurance, including any deductible, maintained by, or provided to, the additional insured." *Id. at § 9.1, p. 9*. The Court's ruling recognized that indemnity would be owed to Youngsville only if Page, the insured, was found by the trier of fact to be liable for the Plaintiff's injury. The Court stated, however, that under Alabama law, the insurer has a broader duty to defend an insured in that the policy must "be construed liberally in favor of the insured and strictly against the insurer." *American States Ins. Co. v. Martin*, 662 So.2d 245, 247 (Ala.1995). "Whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint. If the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Mid-Continent Cas. Co. v. Advantage Medical Electronics, LLC*, 196 So.3d 238, 243 (Ala.,2015).

---

[3] The Contract stated in pertinent part that "Subcontractor [Page] shall defend, indemnify and hold harmless the Owner [Youngsville] . . . from and against claims . . . arising out of or resulting from performance of [Page's] work under this Subcontract. . . attributable to bodily injury . . . caused in whole or in part by the negligent acts or omissions of [Page] . . . regardless of whether or not such claim . . . is caused in part by a party indemnified. *R. 65-4, § 9.6 at p. 10; § 11.1 at p. 11*.

United Fire moves to dismiss Youngsville's Amended Cross-claim against it. In particular, United Fire argues that Youngsville failed to state a claim that United Fire caused Youngsville substantial litigation expenses and monetary loss because Youngsville's CGL insurer, Ironshore, has paid Youngsville's defense costs. *R. 162-2, p. 2.* As a result of this payment, United Fire contends that Ironshore is subrogated to any rights Youngsville may have against United Fire for defense costs paid to date, and therefore, Youngsville has no right to claim defense costs against United Fire. In essence, United Fire contends that no claimant would have a bad faith claim for economic losses against one of its insurers where the claimant had additional insurance coverage that operated to pay the damages incurred by the first insurer's bad faith. The Court finds United Fire's reasoning unavailing.

In its Opposition, Youngsville argues that Ironshore's payment of defense costs is a collateral source that United Fire cannot rely on to reduce its damages or defeat Youngsville's claim against it. It also argues that the elements of a bad faith claim for punitive damages under Alabama law do not require the claimant to prove actual damages.

Youngsville alleges in its Amended Cross-claim that it has incurred and continues to incur "substantial litigation expense and monetary loss." The Court finds it is inconsequential that Ironshore, Youngsville's CGL insurer, has paid Youngsville's defense costs up to this date. Plaintiff's claims alone were sufficient

to give rise to Ironshore's duty to defend. Ironshore owed Youngsville because of a risk assumed by Ironshore and for which Youngsville paid a premium. This duty is completely independent from United Fire's obligation. United Fire would not be entitled to a credit against Youngsville's claimed damages.

"The insured who subrogates a portion of his claim to his own insurer is not precluded, because of the subrogation, from suing in his own name for the entire loss. The [insured's] insurer is then relegated to recovery against the [insured]." *Peacock's, Inc. v. Shreveport Alarm Co.*, 510 So.2d 387, 404 (La.App. 2 Cir.,1987), writ denied, 513 So.2d 826, 827, 828 (La.1987). "It is settled law that the injured claimant who receives payment from his insurer may nevertheless collect the entire amount of his damages from the third party tort-feasor." *American Indem. Co. v. New York Fire & Marine Underwriters, Inc.*, 196 So.2d 592, 596 (La.App., 1967).

In *Kidder v. Boudreaux*, 636 So. 2d 282 (La.App. 3 Cir. 4/6/94), rehearing denied, writs denied, 644 So. 2d 629, 630 (La. 10/07/94), the court held that "The 'collateral source' rule means that a tortfeasor (such as United Fire) may not benefit, and an injured plaintiff's tort recovery (such as Youngsville's) may not be diminished, because of benefits received by the plaintiff from sources independent of the tortfeasor's procuration or contribution. *Id.* at 284. Such reasoning is also true under federal jurisprudence. In *Metoyer v. Auto Club Family Ins. Co*., 536 F.Supp.2d 664 (E.D. La. 3/11/08), the court held that while subrogation rights negate the

9

possibility of double recovery or placing the plaintiff in a better position than they were before the breach, there is no impropriety in applying the doctrine. *Id*. at 670-71.

While United Fire may ultimately owe reimbursement of these damages to Ironshore, they are nonetheless damages arising from United Fire's alleged bad faith conduct towards its additional insured, Youngsville.[4] Thus, regardless of whether Ironshore is subrogated to any of Youngsville's claimed damages, the application of the collateral source doctrine should preclude United Fire from arguing that defense costs already incurred are not the actual damages suffered by Youngsville or that Youngsville has failed to state a claim upon which relief might be granted. As to Youngsville's alternative defense, under Alabama law the essential elements of a bad faith claim for punitive damages do not require the claimant to prove actual damages.[5] Recovery for an insurer's bad faith may include economic loss. *Chavers v. National Sec. Fire & Cas. Co*., 405 So.2d 1, 7 (Ala., 1981).

---

[4] *See Kidder, 636 So.2d at 284* (An exception to the Collateral Source rule exists "where an insurer has the right to subrogate against the totfeasor who injured the plaintiff.").

[5] The Alabama Supreme explained: "We have repeatedly held that the tort of bad-faith refusal to pay a claim has four elements—(a) a breach of insurance contract, (b) the refusal to pay claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence—with a conditional fifth element: (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *State Farm Fire and Cas. Co. v. Brechbill*, 144 So.3d 248, 257 (Ala.,2013).

United Fire continues to assert its argument that Louisiana law rather than Alabama law applies to Youngsville's claims for bad faith punitive damages. The Court has addressed this issue repeatedly and will not reiterate its reasoning as to why Alabama law applies to the Page contract and the United Fire Policy. While Louisiana's choice of law provision La. C.C. art. 3537 rather than La. C.C. art. 3546 applies to Youngsville's claim for punitive damages caused by United Fire's bad faith conduct under the Policy, *see NOLA Ventures, LLC v. Upshaw Ins. Agency, Inc.*, 932 F.Supp.2d 743, 753 (E.D.La.,2013), the Court agrees with Youngsville that regardless of whether its claim is governed by article 3537 or article 3546, Alabama law applies. *R. 176, pp. 3-6.*

### IV. Conclusion

Based on the foregoing, the Court finds that Youngsville has alleged sufficient facts in its Amended Cross-claim to state a claim for punitive damages under Alabama law. Accordingly,

**IT IS ORDERED** that Motion To Dismiss (Punitive Damages) filed by filed by United Fire and Casualty Company ("United Fire") [Rec. Doc. 163] is **DENIED**.

**THUS DONE AND SIGNED** this 18th day of October, 2018.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE